UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JA'NASHIA HOPKINS,

    Plaintiff,

v.                                      Case No. 8:18-cv-01381-T-02AAS

FAMILY DOLLAR STORES
OF FLORIDA, LLC.,

    Defendant.
_____/

## ORDER

This slip and fall case comes to the Court on a motion for summary judgment from Defendant Family Dollar Stores of Florida, LLC. Dkt. 26. Plaintiff has filed an opposition, Dkt. 30, to which Defendant has replied. Dkt. 31. The Court GRANTS Defendant's motion.

### BACKGROUND

On October 11, 2016, Plaintiff slipped on a clear liquid on the floor at a Family Dollar store in Spring Hill, Florida. Dkt. 26-2 at 5. She was accompanied to the store by her grandmother and younger cousin. *Id.* Plaintiff and her cousin went to the right rear aisle where cleaning products were sold. *Id.* at 5-6; Dkt. 26-14 at 7. When her cousin stopped to remove an item from the shelf, Plaintiff walked

around her cousin and continued to walk down the aisle. Dkt. 26-2 at 7, 10. Plaintiff then slipped, fell forward, and landed on the floor on her left side. *Id.* at 7, 10. At her deposition, Plaintiff testified about the liquid:

> A: [I]t was like all gookie when I started to slip.
> Q: So it's something that you felt. Right?
> A: Yes. And then like when I start -- my feet were in it and it kept moving around and started like to form into clunks.
> . . .
> Q: Okay. And then was it a liquid or was it more solid? You mentioned that it was like forming clunks.
> A: At where my feet were like and it was forming clunks, but it was like a liquid. It was like slimy like.
> Q: Slimy. Did you ever find out what that was exactly?
> A: No, I did not.

*Id.* at 10. Plaintiff did not know there was a clear liquid on the floor until she slipped. *Id.* at 6; Dkt. 26-3 at 3. There were no track marks in the area. Dkt. 26-2 at 10; Dkt. 30 at 2. Plaintiff claims she saw one or two dead cockroaches on the floor after falling and assumed that they had been killed by the liquid. Dkt. 26-2 at 5, 10; Dkt. 26-3 at 5. No employee or other customer was in the area at the time. Dkt. 26-2 at 8; Dkt. 26-3 at 7-8.

Plaintiff's grandmother testified that, at the time of the fall, she was shopping in the adjacent aisle. Dkt. 26-12 at 6. The grandmother did not hear any other noise before Plaintiff called out: "Grandma, I fell." *Id.* at 7. She further testified she could not smell any chemicals or see a sign or anything on the floor of the aisle, even after Plaintiff stood up. *Id.* She did not see dirt or debris. *Id.* The

grandmother also testified that Plaintiff's clothing had a bleach spot that it did not have before the fall. *Id.*

Minutes before the fall, store manager Jurgens was returning to the store from the employees' area at the back of the store. Dkt. 26-14 at 5. As she walked to the front to help the cashier, she saw "two or three" people in the corner who were "laughing and giggling and horsing around." *Id.* She looked at them and continued to the front. *Id.* Jurgens, who is trained to "look for things on the floor," did not notice any liquid on the floor. *Id.* at 7, 11. After two or three minutes, she returned to the back of the store to investigate a sound she had heard. *Id.* at 5, 13. It takes about 30 seconds to walk from the register area to the back of the store. *Id.* at 13. At the rear aisle, Jurgens saw both Plaintiff and the liquid on the floor. *Id.* at 5, 7, 13.

The grandmother testified that around this time a "tall guy" who was an employee came from double-doors in the back of the store and looked at Jurgens, "they nodded and that was it." Dkt. 26-12 at 12. The grandmother did not speak to this employee. *Id.* at 12-13. Jurgens could not recall who else was working with her that day but noted that it likely would have been only one cashier. Dkt. 26-14 at 10. She could not identify any current or former male employee who might match the grandmother's description. *Id.* at 10-11.

Jurgens further estimated the puddle as nine-by-nine inches, or the size of a "large dinner plate." Dkt. 26-14 at 6. She did not see footprints or dirt in the puddle, or bugs or debris in the vicinity. *Id.* at 6, 14. Nor were there items or goods in the area, or opened items on the shelves. *Id.* at 8. There were no known leaks or drips in the area, or leaks from the roof or a cooler. *Id.* Jurgens had "no clue" how the liquid got on the floor. *Id.* at 11.

Jurgens testified that she helped Plaintiff up, walked with her, and asked her several times if she was okay. *Id.* at 6. Jurgens thought Plaintiff and her cousin were unaccompanied by a parent, and they just "went out the door." *Id.* The grandmother, meanwhile, stated that Jurgens told Plaintiff to pull herself up on the side of the railing, and they walked together to the front of the store. Dkt. 26-12 at 5. There, the grandmother gave Jurgens their contact information. *Id.* She also testified that she heard two female customers mention "there is something back there on the floor" as the customers exited the store. *Id.* at 8. And Plaintiff testified that Plaintiff was the one who gave the contact information to Jurgens, Dkt. 26-2 at 8, but she did not hear the customers' comments, *id.* at 10. According to Plaintiff, her grandmother heard the comment when she went to the front of the store to notify employees that Plaintiff had fallen. *Id.* at 7.

After Jurgens cleaned up the liquid, the store cashier told her that a customer left her contact information and said Plaintiff was trying to "get over" on the store.

4

Dkt. 26-14 at 11. Jurgens understood this to mean that "either nothing happened or [Plaintiff] made something happen." *Id.*

Jurgens did not recall another fall in the store in the last three and a half years. *Id.* at 9. There is no video footage of the fall, and no one photographed the liquid before Jurgens cleaned up the spill. *Id.* at 6-7, 9-10. No other customer told Jurgens about the liquid before or after the fall. *Id.* at 11.

On May 1, 2018, Plaintiff filed her Complaint in the Circuit Court of the Fifth Judicial Circuit of the State of Florida in and for Hernando County. Dkt. 2. She alleges that Defendant negligently allowed a clear substance to remain on the floor, failed to warn Plaintiff of the dangerous condition created by the substance, and failed to keep its business premises in a reasonably safe condition. *Id.* On June 7, 2018, Defendant removed to the United States District Court for the Middle District of Florida. Dkt. 1. On February 24, 2019, Defendant moved for summary judgment on Plaintiff's one count of negligence. Dkt. 26.

## SUMMARY JUDGMENT STANDARD

In diversity actions, federal courts apply state substantive law and federal procedural law. *Pussinen v. Target Corp.*, 731 F. App'x 936, 938 (11th Cir. 2018). Because summary judgment is a procedural matter, the Federal Rules of Civil Procedure govern. *Id*. Under Rule 56 "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.,* 93 F. 3d 739, 742 (11th Cir. 1996). If met, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F. 3d 1093, 1098 (11th Cir. 2018) (citation omitted).

"A fact is 'material' if it has the potential of 'affect[ing] the outcome of the case.'" *Shaw*, 884 F.3d at 1098. And, to raise a genuine "dispute," the nonmovant must point to enough evidence that "a reasonable jury could return a verdict for [him]." *Id.* (modification in original). The Eleventh Circuit further teaches that "[w]hen considering the record on summary judgment 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* (citations omitted).

## DISCUSSION

In Florida, an individual who "slips and falls on a transitory foreign substance in a business establishment . . . must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." *Pussinen*, 731 F. App'x at 937 (citing Fla. Stat. § 768.0755). A plaintiff can prove circumstantial evidence by showing that "(a) The dangerous condition existed for such a length of time that, in the exercise

6

of ordinary care, the business establishment should have known of the condition; or (b) The condition occurred with regularity and was therefore foreseeable." *Id.*

Here, there is no genuine dispute as to a material fact, and Plaintiff cannot show that Defendant had actual or constructive knowledge of the dangerous condition. Summary judgment is thus appropriate.

I.  <u>Actual Knowledge</u>

To establish actual knowledge of a dangerous condition, Plaintiff must show that Defendant's employees or agents knew of the dangerous condition or created it. *See Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001). There is simply no evidence that Jurgens or any other employee knew about the liquid on the aisle floor before Plaintiff fell.

Jurgens did see Plaintiff in the aisle before the fall but did not see the liquid. Jurgens only saw the liquid minutes later when she returned from the register area to investigate the noise she heard. Plaintiff herself testified that she did not see the liquid or any employees in the area before the fall and that there was no one else in the aisle other than Plaintiff and her cousin.

Even viewed in the light most favorable to Plaintiff, the unidentified customers' comments overheard by her grandmother about the liquid show that the customers were aware of the liquid, not Jurgens or other employees. Yet even if Jurgens also overheard the comments, she would have had actual knowledge of the

condition *after* the fall.[1] The same is true for the message from the customer who left her contact information with the cashier; the message did not put an employee on notice of the liquid on the ground before the fall. And though Jurgens disputed the grandmother's testimony about a tall male employee with whom Jurgens silently nodded, there is no indication on the record that such an employee had prior knowledge of the condition.

Though Plaintiff argues the above disputes should be resolved by a jury, resolution of them in Plaintiff's favor would still compel a finding of no liability for Defendant. Defendant had no actual knowledge of the liquid before the fall.

II.   Constructive Knowledge

A slip and fall plaintiff may prove constructive knowledge: (1) by presenting circumstantial evidence showing that the condition existed for such a length of time that the defendant should have known of the condition through its exercise of ordinary care, or (2) by showing that the unsafe condition occurred with such regularity that it was foreseeable. Fla. Stat. § 768.0755. Here, Plaintiff satisfies neither theory.

---

[1] Defendant analogizes the case to *Palavicini v. Wal-Mart Stores East, L.P.*, Case No. 1:18-CV-20708, 2018 WL 5113947 (S.D. Fla. Aug. 22, 2018) where the plaintiff claimed that right after her fall, an unidentified employee told her that the ceiling above the area of her fall had been leaking for a week. *Id.* at *7. The court did not rely on the hearsay statement as evidence of knowledge of a ceiling leak. Though the Court need not resolve this point, it seems that the customers' comments would be relevant not for the truth of the matter asserted but because they would put Jurgens on notice of the dangerous condition.

"Circumstantial evidence of the passage of time may include dirt, scuffing, or tracks in a substance." *Pussinen*, 731 F. App'x at 937 (citation and internal quotation marks omitted); *see also Garcia v. Wal-Mart Stores East L.P.*, No. 6:14-cv-255-Orl-40TBS, 2015 WL 898582, at *2 (M.D. Fla. Mar. 3, 2015) (noting that evidence of deterioration supports constructive knowledge, while its absence disproves it). Each deponent testified that, at least prior to the fall, there was no dirt, scuffing, or tracks in the liquid.

Plaintiff assumes that the presence of dead cockroaches nearby indicates the passage of time, but Plaintiff did not testify the cockroaches were actually in the liquid or were wet—only that they were dead and on the ground. Indeed, at no point did Jurgens see them, and Plaintiff herself did not even notice the cockroaches until she was on the ground. Cockroaches, alive or dead, are certainly common in Florida. Yet even assuming the liquid was a chemical that might have killed one or two cockroaches, there is no evidence on the record that the cockroaches were on the floor for an extended period of time.

Plaintiff's unsupported assumption that the size of the puddle suggests that it gradually accumulated over time is similarly unavailing. *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932-33 (11th Cir. 2018) (finding that large puddle in combination with observed slow drip from AC unit above could suggest length of time). Indeed, Jurgins's unrefuted testimony shows there were no known leaks in

9

the area. It is just as likely that the puddle was caused by fluid poured with a faster rate of flow.

Plaintiff also argues that the texture of the liquid suggests it was on the floor for longer than a few minutes. But Plaintiff testified that the liquid only "clunked" together as she began to slip. Nor does Plaintiff set forth caselaw or evidence that such "clunking" indicates a passage of time sufficient to impute constructive knowledge, or even that this characteristic of the liquid did not exist at the time it landed on the floor. *Berbridge*, 728 F. App'x at 932 (affirming summary judgment where, "[w]hile [the plaintiff] presented evidence of the source of a 'dark' and 'dirty' substance, there is no evidence that the substance was not 'dark' and 'dirty' when it fell from the AC unit, and [the plaintiff] did not provide any additional detail about what she meant by these terms").

Lastly, Plaintiff suggests that the customers' comments about the presence of liquid suggests the passage of time. Dkt. 26-3 at 5. It might be reasonable to infer that, because Plaintiff and her cousin were alone in the aisle, those customers would have seen the puddle at some point before Plaintiff and her cousin were there. But precisely how long before is, again, pure speculation. Thus, "[t]o infer the passage of time from the evidence Plaintiff has presented would amount to nothing more than a 'guess or mere possibility,' which is insufficient to defeat

summary judgment." *Palavicini v. Wal-Mart Stores East, L.P.*, Case No. 1:18-CV-20708, 2018 WL 5113947, at *6 (S.D. Fla. Aug. 22, 2018) (citation omitted).

In determining a reasonable length of time, courts have also examined whether a business followed its own inspection procedures or inspected the premises on a regular basis. *See Garcia*, 2015 WL 898582, at *2. It is uncontroverted that Defendant's employees are trained to regularly inspect the premises, and they spot clean the store as necessary. Dkt. 26-14 at 4, 7, 11. Jurgens followed these procedures after Plaintiff fell. *Id.* at 7-8. She also looked at the area as she initially walked by the aisle on her way to the register. The five or so minutes between this point and the fall are insufficient to impute constructive knowledge.[2] *See, e.g.*, *Wal-Mart Stores, Inc. v. King*, 592 So. 2d 705 (Fla. 5th DCA 1991) (employees' failure to conduct an inspection 90 minutes prior to fall was by itself insufficient to support constructive knowledge).

Lastly, there is absolutely no evidence this was a condition that occurred so regularly that it was foreseeable. In fact, Jurgens did not remember anyone else falling in the store in three and a half years. Plaintiff's grandmother, who visited the store on a regular basis, confirmed she had never seen any liquid on the floor, or any other customers slip and fall. Dkt. 26-12 at 4. There were no leaks from the

---

[2] Plaintiff suggests that, because of discrepancies between her grandmother's and Jurgens's testimony, Jurgens's "recollection and timeline may not be accurate." Dkt. 30 at 10. But even a mistake of several minutes would not so warp the timeline as to affect the Court's analysis.

ceiling or nearby equipment. There is, moreover, no indication of "active" negligence. *See, e.g.*, *Glaze v. Worley*, 157 So. 3d 552 (Fla. 1st DCA 2015). Summary judgment in favor of Defendant is warranted.

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment. Dkt. 26. The Clerk is directed to enter judgment in favor of Defendant, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Tampa, Florida, on April 4, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record